## HORLICK'S MALTED MILK CORPORATION v. HORLUCK'S, Inc.
### No. 6666.

Circuit Court of Appeals, Ninth Circuit.
May 23, 1932.

Edward S. Rogers and William T. Woodson, both of Chicago, Ill., and Thomas M. Askren, of Seattle, Wash., for appellant and cross-appellee.

C. A. Reynolds, Harry Ballinger, Charles T. Hutson, and Geo. Boldt, all of Seattle, Wash., for appellee and cross-appellant.

Before WILBUR and SAWTELLE, Circuit Judges.

WILBUR, Circuit Judge.

Horlick's Malted Milk Corporation, a Delaware corporation, hereafter referred to as the plaintiff, and its predecessor, have for upwards of fifty years been in the business of manufacturing and selling malted milk in powdered form under the name "Horlick's Malted Milk." Plaintiff has spent in the last twenty years several millions of dollars in advertising its product, over 10 per cent. of which has been spent on the Pacific Coast. Defendant, Horluck's, Inc., admits in its answer that: " * * * Plaintiff has advertised its malted milk under the name, Horlick's Malted Milk, and that it has built up a wide and extensive trade, and that the name, Horlick's Malted Milk, is well known as identifying plaintiff's goods and has a valuable reputation, and long before any acts of defendant in said bill of complaint complained

of the name, Horlick's Malted Milk, has meant and was understood to mean generally throughout the United States, including the city of Seattle and the state of Washington, the plaintiff's product and no other. * * * "

Early in the year 1928 George F. Horluck and his father, Hans Jorgen Horluck, formed the defendant corporation, then named "Horluck's Malted Milk Shops, Inc.," but later changed its name to "Horluck's, Inc." In February, 1928, defendant opened its first store, or shop, in Seattle, Wash., and since has opened several other similar stores, or shops, in Seattle, Tacoma, Bellingham, and Bremerton, all in the state of Washington. At these shops defendant sells ice cream, sandwiches and other food products and beverages, among them malted milk. It is admitted that defendant does not use Horlick's Malted Milk as an ingredient in the malted milk beverage it dispenses, but does use another brand of malted milk. These shops are called "Horluck's Specialty Malted Milk Shops," and in advertising the same defendant uses the names "Horluck's Malted Milk," "Horluck's Specialty Malted Milk Shop," and "Horluck's Malted Milk Shop."

Plaintiff brought suit in the District Court for the Western District of Washington to enjoin infringement of its trade-mark and unfair competition. The District Court enjoined defendant from using the words "Horluck's Malted Milk" or "Horluck's Malted Milk Shops" in connection with its business, but refused to enjoin the defendant from using the name "Horluck's" in connection with the advertising and sale of malted milk, and decreed that defendant account to plaintiff its damages but refused an accounting for profits. Plaintiff appeals on the ground that the decree of the District Court does not sufficiently protect it against unfair competition inasmuch as defendant is still permitted to use the name "Horluck's" in the sale of malted milk and that the accounting should include not only damages, but the profits realized by defendant from its unfair trading as well. Defendant took a cross-appeal claiming that the lower court was in error in adjudging that defendant had practiced unfair competition. The appeal and cross-appeal will be considered together.

■ Plaintiff's predecessor registered the word Horlick's as a trade-mark for malted milk under the Federal Trade-Mark Act of February 20, 1905 (15 USCA §§ 81–109), as well as under the statutes of the state of Washington (Rem. Comp. Stat. Wash. § 11537 et seq.). The findings of the lower

court, which are amply sustained by the evidence, are to the effect that plaintiff's business in the state of Washington is and always has been wholly interstate, and not intrastate, and that the business of defendant is wholly intrastate. Therefore, this suit cannot be maintained on the basis of trade-mark infringement, but must be sustained, if at all, on the basis of diversity of citizenship and unfair competition. United States Printing & Lithograph Co. v. Griggs, Cooper & Co., 279 U. S. 156, 49 S. Ct. 267, 73 L. Ed. 650.

▇ The evidence shows that plaintiff deals exclusively in powdered malted milk, selling the same only to the retailer and not to the consumer, and that it has never been in the business of dispensing the beverage known as malted milk made with such powder as an ingredient. Therefore, defendant claims there is no direct competition between plaintiff and defendant without which there can be no unfair competition. This court dealt with a similar situation in the case of Del Monte Special Food Co. v. California Packing Corp., 34 F.(2d) 774, 775. There the contention of appellant was that, inasmuch as the appellee had not produced and did not then produce oleomargarine or use its label thereon, it was not and could not be damaged by the use of "Del Monte Brand" upon the oleomargarine marketed by the appellant. There this court said: "The injury to the appellee by the use of the Del Monte Brand by the appellant does not result from preventing sale by appellee of oleomargarine of its own, but from a representation to the public that it produces a product which it does not in fact produce and over which it has no control."

The case of Yale Elec. Corp. v. Robertson (C. C. A.) 26 F.(2d) 972, 974, was there quoted with approval as follows: "However, it has of recent years been recognized that a merchant may have a sufficient economic interest in the use of his mark outside the field of his own exploitation to justify interposition by a court. His mark is his authentic seal; by it he vouches for the goods which bear it; it carries his name for good or ill. If another uses it, he borrows the owner's reputation, whose quality no longer lies within his own control. This is an injury, even though the borrower does not tarnish it, or divert any sales by its use; for a reputation, like a face, is the symbol of its possessor and creator, and another can use it only as a mask. And so it has come to be recognized that, unless the borrower's use is so foreign to the owner's as to insure against any identification of the two, it is unlawful. Aunt Jemima

Mills Co. v. Rigney, 247 F. 407, L. R. A. 1918C, 1039 (C. C. A. 2); Akron-Overland v. Willys-Overland, 273 F. 674 (C. C. A. 3); Vogue Co. v. Thompson-Hudson Co., 300 F. 509 (C. C. A. 6); Wall v. Rolls-Royce, 4 F. (2d) 333 (C. C. A. 3)."

It follows that the mere fact that plaintiff is not in the business of dispensing the beverage called malted milk does not eliminate the possibility of unfair competition in the case at bar. See, also, Vogue Co. v. Thompson-Hudson Co. et al. (C. C. A.) 300 F. 509; Rosenberg Bros. & Co. v. Elliott (C. C. A.) 7 F.(2d) 962.

[3, 4] Defendant seeks to justify its use of the word "Horluck's" in its name and in its advertising of malted milk upon the ground that the surname of its founders and principal stockholders is "Horluck." As a general proposition, a person has a right to use his own name in connection with any business which he carries on honestly. Howe Scale Co. v. Wyckoff, Seamans & Benedict, 198 U. S. 118, 25 S. Ct. 609, 49 L. Ed. 972. But where a personal name has become associated in the minds of the public with certain goods or a particular business, it is the duty of a person with the same or similar name, subsequently engaging in the same or similar business or dealing in like goods, to take such affirmative steps as may be necessary to prevent his goods or business from becoming confused with the goods or business of the established trader. Herring-Hall-Marvin Safe Co. v. Hall's Safe Co., 208 U. S. 554, 559, 28 S. Ct. 350, 52 L. Ed. 616; L. E. Waterman Co. v. Modern Pen Co., 235 U. S. 88, 35 S. Ct. 91, 59 L. Ed. 142. In Chickering et al. v. Chickering & Sons, 215 F. 490, 494, Circuit Judge Mack, speaking for the Circuit Court of Appeals for the Seventh Circuit, said: "A surname is not the subject-matter of a technical trade-mark. This is due to the fact that it cannot be a clearly distinguishing mark on goods, inasmuch as any one bearing the name has a right to use it in connection with property of his manufacture. It may, however, by appropriation and actual exclusive use, in course of time come to denote, in the minds of the public, the product of some particular person or factory or business, and thus acquire a secondary signification. Such a secondary signification, when established, is the subject-matter of exclusive right; as Judge Baker said in Hanover Star Milling Co. v. Allen & Wheeler Co., 208 F. 513, 125 C. C. A. 515: 'If a dealer marks his shaving soap by the family name of "Williams," or his ale by the name of the village of "Stone," or his starch by the name

of the hamlet of "Glenfield," his application of the name does not create its only meaning; but, if his trade creates a new meaning for the name, then he is entitled to just as full protection in the use of that meaning as if that were the only one. Others may use the common word in its common meaning, but they cannot use it in the particular meaning created by the complainant.' "

As the Supreme Court, speaking through Mr. Justice Holmes, said in L. E. Waterman Co. v. Modern Pen Co., 235 U. S. 88, 94, 35 S. Ct. 91, 92, 59 L. Ed. 142, supra, "There is no distinction between corporations and natural persons in the principle, which is to prevent a fraud."

In the case at bar the evidence discloses instances of persons patronizing defendant's shops under the belief that they were getting plaintiff's product as an ingredient in the malted milks they purchased and under the belief that plaintiff was operating these shops or connected in some way therewith. It is clear from the evidence in the record that the use by the defendant of the word "Horluck's" closely associated with the words "Malted Milk," and especially when displayed by the appellee in block and script type similar to that used by plaintiff in its advertising, caused confusion in the mind of the public.

The lower court found as a fact that "the public fails to distinguish between the words Horlick's and Horluck's and the use of the name Horluck's by the defendant in connection with its shops has caused confusion in the minds of the public, and purchasers have patronized defendant's shops believing that such shops were owned and operated by plaintiff," and also: "That such confusion as has arisen concerning the proprietorship of defendant's shops has mainly arisen from the similarity between the names of Horlick's and Horluck's used in association with the words 'Malted Milk.' "

There being real confusion in the mind of the public as to the identity of the defendant's business, a duty devolved upon the defendant to take affirmative steps to avoid such confusion. In Herring-Hall-Marvin Safe Co. v. Hall's Safe Co., 208 U. S. 554, 559, 28 S. Ct. 350, 352, 52 L. Ed. 616, supra, the Supreme Court, speaking through Mr. Justice Holmes, said: "The principle of the duty to explain is recognized in Howe Scale Co. v. Wyckoff, Seamans & Benedict, 198 U. S. 118, 25 S. Ct. 609, 49 L. Ed. 972. It is not confined to words that can be made a trade-mark in a full sense. The name of a person or a

town may have become so associated with a particular product that the mere attaching of that name to a similar product, without more, would have all the effect of a falsehood. Walter Baker & Co. v. Slack, 65 C. C. A. 138, 130 F. 514. An absolute prohibition against using the name would carry trade-marks too far. Therefore the rights of the two parties have been reconciled by allowing the use, provided that an explanation is attached. Singer Mfg. Co. v. June Mfg. Co., 163 U. S. 169, 200, 204, 16 S. Ct. 1002, 41 L. Ed. 118, 130, 131; Brinsmead v. Brinsmead, 13 Times L. R. 3; Reddaway v. Banham (1896) A. C. 199, 210, 222; American Waltham Watch Co. v. United States Watch Co., 173 Mass. 85, 87, 53 N. E. 141, 43 L. R. A. 826, 73 Am. St. Rep. 263; Dodge Stationery Co. v. Dodge, 145 Cal. 380, 78 P. 879. Of course, the explanation must accompany the use, so as to give the antidote with the bane."

The evidence shows that defendant in its newspaper advertising and in the circulars exploiting its own business, which it keeps on its counters for distribution, refers to the local character of its organization. These acts tend to diminish the confusion resulting from the use of the words "Horluck's Malted Milk," but are insufficient to discharge the duty upon defendant to avoid this confusion.

The decree of the District Court in the case at bar enjoins defendant: "(a) From using, in connection with its retail establishments, or otherwise, the words Horluck's Malted Milk or Horluck's Malted Milk Shops or any other name which may be calculated to induce the belief that the plaintiff is operating the defendant's shops or is connected in any way therewith, or that the defendant is dispensing plaintiff's product, Horlick's Malted Milk; (b) From doing any act or thing calculated to induce the belief that any product or business not connected with the plaintiff is so connected."

We think that the defendant should be definitely enjoined from using the name "Horluck" in the possessive, i. e., "Horluck's," or in the plural, i. e., "Horlucks," in connection with the sale of malted milk. The use of the possessive is one of the most objectionable features of defendant's practices, inasmuch as it is the possessive "Horlick's" with which plaintiff's product is associated in the mind of the public. This will still leave the defendant free to use its name in connection with its business in any lawful way and is in conformity with the decided cases, giving both the plaintiff and defendant ample protection of their respective rights. L. E. Wa-

terman Co. v. Modern Pen Co., 235 U. S. 88, 35 S. Ct. 91, 59 L. Ed. 142; Thaddeus Davids Co. v. Davids, 233 U. S. 461, 34 S. Ct. 648, 58 L. Ed. 1046; Singer Mfg. Co. v. June Mfg. Co., 163 U. S. 169, 16 S. Ct. 1002, 41 L. Ed. 118; Herring-Hall-Marvin Safe Co. v. Hall's Safe Co., 208 U. S. 554, 28 S. Ct. 350, 52 L. Ed. 616; Chickering et al. v. Chickering & Sons et al. (C. C. A.) 215 F. 490.

There remains for us to consider the question of compensation to the plaintiff for the injury caused by the unlawful acts of defendant. The District Court decreed an accounting of damages, but plaintiff contends it is entitled to an accounting of the profits made by defendant as well, while the defendant claims that the damage to the plaintiff, if any, is remote, consequential, and conjectural, and does not furnish a proper basis for ascertainment and computation of damages. It is to be remembered that there was no direct competition between plaintiff and defendant, and the testimony of plaintiff's own witnesses was to the effect that defendant's acts have not deprived it of any sales of its product. In Vogue Co. v. Thompson-Hudson Co. et al., 300 F. 509, 512, Judge Denison, speaking for the Circuit Court of Appeals for the Sixth Circuit, said: "However, we find no satisfactory basis for an accounting against either the manufacturer or retailer for profits or damages. The case is peculiarly one where such damage as has occurred, like that which is still in prospect, is incapable of computation. We see no reasonable probability that any substantial damages could be proved and reduced to dollars and cents with that degree of accuracy that is essential in such a case. Nor does this conclusion—that there should be no accounting—make it necessary to decide whether plaintiff is entitled to relief strictly as for trade-mark infringement. Those cases in which plaintiff in such a suit has been awarded all the profits which defendant received from the sale of the articles wrongfully trade-marked, have been cases in which, by the theory of the law, the plaintiff had lost the sales. The plaintiff's relief will therefore be confined to the issue of an injunction and the recovery of taxable costs of both courts."

See, also, Rosenberg Bros. & Co. v. Elliott, 7 F.(2d) 962 (C. C. A. 3).

In Gallet et al. v. R. & G. Soap & Supply Co., 254 F. 802, 804 (C. C. A. 2), the court said: "Nor are the appellants entitled to an accounting. There is no concession nor evidence which indicates that a single sale was made as a result of any misconception or misleading advertisements with the use of the initials 'R.' and 'G.' on the labels of the commodities sold by the appellee, and there can be no damage in connection with the violation of the appellants' rights, which have now been restrained, except there was injury to the business and good will of the appellants. Such damage could only be demonstrated by loss of sales which otherwise would have accrued to the injured business. An accounting will not be ordered, unless it is clear that either upon the record, or upon a record which the appellants might present to the master, there could be a substantial recovery. Merriam [Co.] v. Saalfield, 198 F. 369, 117 C. C. A. 245."

In view of the fact that there is no evidence of lost sales in this case, we conclude that the plaintiff is not entitled even to an accounting of damages. The decree for an injunction is modified by adding after the provision "b" above quoted, the following provision: "(c) Or from using the name Horluck's or Horlucks, but not Horluck in connection with the business of dispensing or selling malted milk."

The decree is further modified by striking therefrom the provisions in reference to an accounting for damages.

As so modified the decree is affirmed, each party to pay its own costs.